[Cite as *State v. Ferguson*, 2020-Ohio-4153.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28644 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-2097 |
| | : | |
| JAMES JOSHUA FERGUSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2020.

. . . . . . . . . . .

MATHIAS H. HECK JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, P.O. Box 145, Springboro, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} James Joshua Ferguson appeals his convictions for aggravated possession of drugs and having weapons while under disability. Finding no error, we affirm.

## I. Facts and Procedural Background

{¶ 2} Ferguson was indicted on one count each of aggravated possession of drugs, a second-degree felony; having weapons while under a disability (prior drug conviction), a third-degree felony; and carry concealed weapons, a fourth-degree felony. He moved to suppress all evidence obtained from what Ferguson alleged was an unlawful stop, search, and seizure. A suppression hearing was held at which evidence was presented that established the following facts.

{¶ 3} On April 26, 2019, Officer Paul Datkiss, a police officer for the City of Trotwood, was on road patrol, uniformed and driving a marked cruiser. Around 1:20 p.m., he was dispatched to the location of a possible hit-and-run accident. Datkiss was the first officer on the scene. Paramedics were already there attending to a man, later identified as Ferguson, who had been hit by a car while driving his motorcycle. A medic told Datkiss that Ferguson was refusing medical treatment. In an effort to figure out what had happened, Datkiss approached Ferguson and asked him. Ferguson explained that he was trying to make a turn around one of the islands that divides the north and south lanes of the road when a grey vehicle struck him, hitting his left leg. According to Ferguson, the driver had stopped, but Ferguson told him to leave and that he was okay. Officer Datkiss thought that Ferguson was acting a little odd: he had just been hit by a vehicle but did not want to be treated by the paramedics or to file a police report.

{¶ 4} Officer Stephanie Anderson arrived shortly after Officer Datkiss. After Datkiss

had talked to Ferguson, Officer Anderson took over the investigation. She asked Datkiss if he had searched Ferguson for weapons, and Datkiss answered that he had not. Officer Datkiss then asked Ferguson if he was armed. Ferguson admitted that he was carrying a concealed handgun in a shoulder holster. He also admitted that he did not have a conceal-carry permit in either West Virginia (where he was from) or Ohio. When asked, Ferguson also admitted that he had prior felony convictions. Officer Anderson then handcuffed Ferguson and removed the loaded handgun from the holster.

{¶ 5} Officer Datkiss testified that Ferguson was not under arrest before admitting that he had the gun and that, after Ferguson's admissions, the officers' investigation shifted to the gun. Datkiss asked Ferguson if he was carrying any other weapons, and Ferguson said that there was a knife in his right pocket; Datkiss retrieved the knife and handed it to Officer Anderson. Datkiss asked Ferguson if he had any other weapons, and Ferguson said that there was also a knife in his left pocket. While retrieving this knife, Officer Datkiss felt what he immediately knew was a syringe based on his training and experience. When Datkiss grasped the syringe, he also grasped a baggie containing what he suspected, based on his knowledge, training, and experience, was drug residue.

{¶ 6} The officers then brought Ferguson over to Officer Anderson's cruiser and searched him. In his front left jacket pocket, they found a plastic cup with a clear plastic lid. Inside the cup, Officer Datkiss found a handful of new Ziploc baggies and a baggie containing what he suspected (and what later testing confirmed) was methamphetamine.

{¶ 7} Based on these facts, the trial court overruled Ferguson's motion to suppress. The court concluded that the encounter with Officer Datkiss was consensual and that Ferguson voluntarily admitted that he was armed, did not have a permit, and had

prior felony convictions. The court concluded that these circumstances gave the officers probable cause to search him, which led to the discovery of the drugs.

{¶ 8} Ferguson pleaded no contest to aggravated possession of drugs and having weapons while under disability, and the trial court found him guilty on both charges. The state dismissed the concealed-weapons charge. Although the court initially imposed a definite sentence of two years in prison, before the conclusion of the sentencing hearing the court determined that the recently-enacted Reagan Tokes Law affected Ferguson's sentence. The court then fully advised Ferguson of the impact of that statute and proceeded to sentence him accordingly. Defense counsel objected that the Regan Tokes Law was unconstitutional, but the court ruled that it was the law in Ohio and that the court would follow it. For the drug offense, the court sentenced Ferguson to an indefinite prison term of a minimum of two years to a maximum of three years; for the weapons offense, the court sentenced him to a concurrent minimum prison term of 12 months.

{¶ 9} Ferguson appeals.

## II. Analysis

{¶ 10} Ferguson assigns two errors to the trial court. The first challenges the denial of his motion to suppress. The second challenges the constitutionality of the Reagan Tokes Law.

### A. The overruling of the motion to suppress

{¶ 11} The first assignment of error alleges that the trial court erred by denying Ferguson's motion to suppress. Appellate review of a motion to suppress presents a mixed question of fact and law. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court accepts the trial court's findings of fact if they are

supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 12} The Fourth Amendment to the United States Constitution, and Section 14, Article I of the Ohio Constitution, protect individuals from unreasonable searches and seizures conducted by police officers. *See Delaware v. Prouse*, 44 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 66 (1979); *State v. Robinette*, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997). The Fourth Amendment is "not implicated every time a police officer has contact with a citizen." *State v. Greene*, 2d Dist. Montgomery No. 26138, 2015-Ohio-2060, ¶ 14; *see also California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). It is implicated in an investigatory detention, because the detention constitutes a "seizure." *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). But a seizure does not occur in what is known as a consensual encounter, a situation in which "a police officer approaches an individual and asks a few questions," and therefore the Fourth Amendment is not implicated. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The trial court concluded that the encounter was consensual, but Ferguson contends that his encounter with the police officers was an investigatory detention.

{¶ 13} The tests for both an investigatory detention and a consensual encounter are objective. "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or [was] compelled to respond to questions." *State v. Lewis*, 2d Dist. Montgomery No. 22726,

2009-Ohio-158, ¶ 22, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and *Terry* at 19, fn. 16. A consensual encounter occurs "when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away." *Id.* at ¶ 21, citing *Mendenhall* at 553. In other words, "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business' the encounter is consensual." *Bostick* at 434, quoting *Hodari D.* at 628. The consensual nature of an encounter is not lost by police questioning. *Id.* ("mere police questioning does not constitute a seizure").

{¶ 14} The trial court found that Officer Datkiss believed that Ferguson had been the victim of a hit-and-run and that Datkiss was trying to find out what had happened. As far as the officers knew, Ferguson was the victim of a crime, not the perpetrator. There is no evidence that Datkiss or Officer Anderson was in any way coercive—whether by physical force or show of authority. In short, nothing about the circumstances would have led a reasonable person to believe that he was not free to leave or that he was required to respond to the officers' questions. At the time that Officer Datkiss asked Ferguson if he was armed, a reasonable person in that situation would have felt free to disregard the question and leave. The facts in the record reasonably support the trial court's conclusion that the contact between Ferguson and the police officers constituted a consensual encounter.

{¶ 15} Furthermore, Officer Datkiss was not prohibited from asking Ferguson if he was armed, despite having no reason to suspect that he was. During a consensual encounter, there are no restrictions on the subject matter of a police officer's questions. The U.S. Supreme Court has said, "even when officers have no basis for suspecting a

particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage, as long as the police do not convey a message that compliance with their requests is required." (Citations omitted.) *Bostick*, 501 U.S. at 434-435, 111 S.Ct. 2382, 115 L.Ed.2d 389. We note too that during a valid traffic stop—a seizure triggering the Fourth Amendment—a police officer may ask questions even if unrelated to the detention, even about other crimes. *See Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) ("[a]n officer's inquiries into matters unrelated to the justification for the traffic stop * * * do not convert the encounter into something other than a lawful seizure"); *State v. Lawson*, 180 Ohio App.3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 39 (2d Dist.) (any questioning that occurs during a traffic stop, even if unrelated to the detention, is valid).

{¶ 16} Once Ferguson voluntarily answered Officer Datkiss's question and admitted that he was armed, and further admitted that he did not have a concealed-carry permit and had prior felony convictions, the officers had probable cause to search Ferguson, which led to the lawful discovery of the drugs.

{¶ 17} The trial court did not err by overruling Ferguson's motion to suppress. The first assignment of error is overruled.

### B. The constitutionality of the Reagan Tokes Law

{¶ 18} The second assignment of error alleges that Ferguson's sentence under the Reagan Tokes Law (S.B. 201) was unlawful because the Law is unconstitutional. Ferguson argues that the Law violates the separation-of-powers doctrine and deprives an offender of due process.

{¶ 19} "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus; *Woods v. Telb*, 89 Ohio St.3d 504, 510-511, 733 N.E.2d 1103 (2000) (quoting the same). "[T]he party challenging the statute bears the burden of proving the unconstitutionality of the statute." *Woods* at 511, citing *State v. Thompkins*, 75 Ohio St.3d 558, 560, 664 N.E.2d 926 (1996).

{¶ 20} The Reagan Tokes Law, effective on March 22, 2019, " 'significantly altered the sentencing structure for many of Ohio's most serious felonies' by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after the effective date." *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, ¶ 5, fn. 1. The Law requires the sentencing judge to impose a "minimum term" from within the currently established sentencing range and a "maximum term" of an additional fifty percent of the imposed minimum term. *See* R.C. 2929.144(B). "Release [from prison] is presumed to occur at the expiration of the 'minimum term,' however the Department of Rehabilitation and Corrections [DRC] may, under certain circumstances rebut that release presumption and impose additional prison time up to the 'maximum term.' " The Ohio Criminal Sentencing Commission, *SB 201 Quick Reference Guide* July 2019. The DRC may also reduce the minimum term, with the approval of the sentencing court. *Id.*

{¶ 21} Ferguson first argues that the Reagan Tokes Law violates the separation-of-powers doctrine. The Ohio Supreme Court has said that "[t]he administration of justice

by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph one of the syllabus. Ferguson says that the Reagan Tokes Law usurps judicial authority by delegating to the DRC the power to impose additional prison time beyond the minimum. He relies on *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), in which the Ohio Supreme Court held that a statute that allowed the parole board to punish criminal conduct committed by a prisoner by extending the prisoner's stated prison term violated the separation-of-powers doctrine. The Court found that this "bad time" statute established a scheme in which the parole board acted "as judge, prosecutor, and jury," for the commission of a crime that could be prosecuted as a felony. *Bray* at 135.

{¶ 22} But Ferguson fails to mention that, a couple of months after deciding *Bray*, the Court decided *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000), holding that the post-release-control statute did not violate the separation-of-powers doctrine. The post-release-control statute required a court to impose the terms of post-release control and left it to the Adult Parole Authority (APA) to determine whether to impose sanctions for any violation of the terms. The Court said that this statute was "clearly distinguishable" from the bad-time statute at issue in *Bray*. *Woods* at 512. Unlike additional prison time under the latter statute, post-release-control terms were made part of the original judicially imposed sentence. "[B]ecause the APA's discretion in managing post-release control does not impede the function of the judicial branch," said the Court, the post-release-control statute did not violate the separation-of-powers doctrine. *Id.*

{¶ 23} In later decisions, the Court has made it clear that, when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence. *See Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 18-20, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19, citing *Woods*. Such is the case under the scheme established by the Reagan Tokes Law. A court imposes both the minimum and maximum prison terms, including both in its sentence. The DRC then determines whether the offender merits more than the minimum and up to the maximum imposed. In terms of the separation of powers, the delegation of power to the DRC is like the system of post-release control: "Those terms are part of the actual sentence, unlike bad time, where a crime committed while incarcerated resulted in an additional sentence not imposed by the court. In other words, the court imposes the full sentence and the [DRC] determines whether violations merited its imposition." *Woods* at 511. Accordingly, the Reagan Tokes Law does not violate the separation-of-powers doctrine.

{¶ 24} Ferguson also argues that the Reagan Tokes Law violates due process by giving the DRC unfettered discretion to decide whether an offender's actions merit more than the minimum term.

{¶ 25} "[T]he fundamental requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner." *Woods* at 513, citing *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Reagan Tokes Law satisfies these requirements. The Law states that, in order to rebut the presumption of the minimum term, the DRC must make a particular statutory determination "at a

hearing." R.C. 2967.271(C) and (D). The Law does not give the DRC unfettered discretion to require an offender to serve more than the minimum term. And it affords an offender notice and an opportunity to be heard before more than the minimum may be required.

{¶ 26} Lastly, in support of both of his constitutional arguments, Ferguson cites a Hamilton County trial court decision, *State v. Oneal*, Hamilton C.P. No. B 1903562, 2019 WL 7670061 (Nov. 20, 2019), which concluded that the Reagan Tokes Law is unconstitutional because it violates the separation-of-power doctrine and due process. The court analogizes the Law to the bad-time statute in *Bray* and concludes that that Law "clearly violates the separation of powers doctrine," because it allows the DRC rather than a judge to determine whether to give an "additional sentence." *Id.* at *5. And because it concluded that a judge should be involved, the trial court also concluded that the Law violates due process. But these conclusions are unpersuasive because the court did not consider *Woods* at all. Consequently, we conclude that court failed to recognize that under the Reagan Tokes Law a court imposes the "additional sentence" when imposing a maximum prison term.

{¶ 27} Ferguson fails to prove that the Reagan Tokes Law is unconstitutional, so he has not shown that his sentence was unlawful. The second assignment of error is overruled.

## C. Conclusion

{¶ 28} We have overruled both of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J., concurs.

FROELICH, J., concurs:

{¶ 29} Given the record in this case, I concur in the judgment and write only to note that the facts may push the limit of when a reasonable person would feel free to disregard a uniformed law enforcement officer and/or just walk away and/or ignore the police presence and go about his business.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Johnna M. Shia
Hon. Gerald Parker