[Cite as *State v. Montanaro*, 2022-Ohio-4343.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CA49 |
| | : | |
| PAUL MONTANARO | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Richland County Court
                                of Common Pleas, Case No.
                                2020CR502N

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         December 2, 2022

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

GARY BISHOP                             DARIN AVERY
RICHLAND CO. PROSECUTOR                 105 Sturges Ave.
VICTORIA MUNSON                         Mansfield, OH 44903
38 South Park St., Second Floor
Mansfield, OH 44902

*Delaney, J.*

{¶1} Appellant Paul Montanaro appeals from the June 21, 2021 Sentencing Entry of the Richland County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following facts are adduced from the record of appellant's jury trial. The instant case arose on November 17, 2019, at Mansfield Correctional Institution, where appellant was serving a prison term of 15 years for aggravated robbery, a first-degree felony.

{¶3} C.O. Brooks testified that a homemade weapon in prison is called a "shank" and is generally an item that is unremarkable in its original condition but is altered in some way by the prisoner to enable the item to "cause damage" to other people, including other inmates and corrections officers. Brooks cited metal drawer fronts, tweezers, and scissors as examples of items which might be sharpened or altered in some way for use as a weapon. If an item is altered, it becomes contraband and possession of such is prohibited for inmate and officer safety.

{¶4} On November 17, 2019, Brooks met with appellant because appellant had complained his JP5 player was missing. A JP5 player is a media device inmates can purchase through the state and use to listen to music and to make phone calls. When an item is reported lost or stolen, an officer must create a "theft-loss report" and shake the cell down, which means searching all of the inmate's belongings. The shakedown is intended to prevent inmates from selling an item and then reporting it lost or stolen.

{¶5} Brooks went to appellant's cell and looked in; appellant was alone, sitting on the bottom bunk with an object in his right hand. Brooks breached the door of the cell

and told appellant to drop the item in his hand. Brooks testified appellant stood up, and he repeated, "Drop it." Appellant "attempted to, what appeared to be attempted to throw it in the toilet" but missed. T. 244. Brooks told appellant to "cuff up" and appellant immediately turned around and placed his hands behind his back. Brooks testified that appellant did not seem agitated "or like he was going to attack [Brooks] or anything." T. 244. Brooks cuffed appellant, led him to the day room, and secured the cell door.

{¶6} Appellee's Exhibit 1 was shown to Brooks at trial and he identified it as the homemade weapon he retrieved from appellant's cell beside the toilet. Brooks testified the item appeared to have originally been a pair of tweezers, which are available to inmates through the commissary. Appellee's Exhibit 1, however, has one side of the tweezers broken off and the remaining piece is sharpened into a point. Brooks testified inmates have no means of grinding metal so someone would have sharpened the point on concrete for a very long time. The sharpened piece of tweezer also has a portion wrapped with a shoelace which functions as a handle or grip and, Brooks speculated, would allow appellant to hold it without slipping.

{¶7} Brooks testified that the size of a weapon does not dictate whether it is perceived to be a deadly weapon; even a small sharpened object such as this could be used to attack vital organs and could be deadly. In Brooks' opinion, the sharpened tweezer found in appellant's possession is a weapon capable of inflicting death.

{¶8} Brooks' first priority was securing appellant. After that was accomplished, the cell was searched and the contraband weapon was seized and secured in an evidence vault. Appellant's missing JP5 was found during the cell search. Brooks testified he also found a contraband light bulb with a hole drilled into it that may have been

used as a pipe. He did not find any homemade tattoo gun, contrary to appellant's assertions later in the trial.

{¶9} Upon cross-examination, Brooks testified that appellant has been ticketed, or disciplined, in the past for tattooing, and that some officers overlook petty rule violations in the facility but possession of this weapon is not a petty violation. Brooks speculated the tweezers were separated and broken in half for the express purpose of rendering the weapon easier to sharpen.

{¶10} Uriah Melton is an investigator at Mansfield Correctional Institution and has reviewed many weapons confiscated from inmates, commonly referred to as "shanks" or "hawks." Melton such weapons are usually common items sharpened into a point to be used as a poker-style weapon to cause injury. In the instant case, Melton described appellee's Exhibit 1 as a deadly weapon because it has a wrapped handle to allow someone to keep a better grip and protect the hand as the weapon is used to stab. Melton testified that the small size of the item does not invalidate its use as a deadly weapon because it is easy to conceal and inflict poking-type injuries to vital organs.

{¶11} Melton characterized appellee's Exhibit 1 as a weapon, not a tool. He pointed out that the item is sharpened to a point which means it is unlikely to be intended for use as a tool. Sometimes inmates fashion homemade tools to work on electronics, which is also prohibited, but a tool would typically have a flat or Phillips-type head, akin to a screwdriver, rather than a sharp point. The consequence for having a homemade tool in prison would be relatively minor, likely an administrative sanction.

{¶12} Trooper Tyler Carr of the Ohio State Highway Patrol Office of Investigative Services is tasked with investigating crimes on state-owned properties, including prisons.

Many of the crimes Carr investigates involve "shanks," and he explained that the first step in his investigation is to obtain the alleged shank from the evidence locker and to examine it; if the item doesn't qualify as a weapon, no criminal action is taken and the prison deals with the matter administratively.

{¶13} In the instant case, Carr testified that appellee's Exhibit 1 is a deadly weapon. Carr offered for comparison the example of a sharpened toothbrush, an item he has seen several times in his career. A sharpened toothbrush is generally flimsy and blunt because grinding plastic against a cinder block or the floor will not produce a sharp point. He has therefore declined to prosecute such items as "shanks." In comparison, appellee's Exhibit 1 is steel, is very sharp, and can cause death. The purpose of the shoelace wrapped around the sharpened tweezer is to form a grip so it stays in the inmate's hand and doesn't slide out. Carr has seen similar grips on other shanks.

{¶14} Carr questioned appellant in the course of his investigation. Appellant said he was seated on his bunk when the C.O. came in and told him to put down whatever he had in his hands, which appellant claimed was a tattoo gun and a screwdriver. Appellant told Carr he threw the items toward the corner of the cell and the C.O. collected the items.

{¶15} Appellee also introduced evidence that appellant went before the facility's Rules Infraction Board for prosecution of the offense of possession of a shank and pleaded guilty. Appellant's explanation to the Board was that he was sorry and it wouldn't happen again; he did not claim that the item was a tool.

{¶16} Appellant was the sole defense witness at trial. Appellant testified he has served about half of his fifteen-year sentence for aggravated robbery, an offense to which he pled guilty. He testified that prison life is difficult for him because he isn't in a gang

and the gangs "control" the prison, meaning gang members dictate what others do. Appellant said he is accepted because he "shoots tattoos" and fixes things such as electronics, including TVs, headphones, and JP5 players. Inmates save money from prison jobs to pay for the items, or get money from home.

{¶17} Appellant testified that this incident began when he reported his own JP5 player lost or stolen during a shakedown, several days before Brooks arrived at his cell to take the report. When asked whether his JP5 was ever recovered, appellant said yes, his cellmate had it all along, and the cellmate later gave it directly to Brooks. Appellant testified that he knew Brooks would search the cell and he was aware that morning that Brooks was on his way; appellant heard Brooks coming and did not attempt to get rid of anything he was holding. Appellant claimed he was "working on his tattoo gun at the time." T. 372. Appellant testified that Brooks allows him to "shoot tattoos." He has been administratively sanctioned for tattooing a few times, but many more times the C.O.s have simply taken his tattoo gun and thrown it away. On the 17th, he was attempting to open the motor of the tattoo gun with a homemade screwdriver.

{¶18} Appellant testified that Brooks entered the cell and told him to "drop it," confusing him. He threw the item into the corner of the cell and "cuffed up" pursuant to Brooks' command. Appellant maintained that appellee's Exhibit 1 is the screwdriver he was using as a tool and he has never thought of it as a weapon or used it as a weapon.

{¶19} Upon cross-examination, appellant acknowledged he bought the tweezers, the shoelace, and a pen from the commissary and sharpened the tweezers on the ground. He pulled off one side of the tweezers because it made them easier to sharpen. He also acknowledged no tattoo gun was found during this incident or the ensuing shakedown.

{¶20} Appellant was charged by indictment with one count of possession of a deadly weapon while under detention in violation of R.C. 2923.131(B) and R.C. 2923.131(C)(2)(b)(i), a felony of the second degree.

{¶21} Appellant entered a plea of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty as charged and the trial court sentenced him to an indefinite prison term of four to six years.

{¶22} Appellant now appeals from the trial court's Sentencing Entry of June 21, 2021.

{¶23} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶24} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29 MOTION."

{¶25} "II. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶26} "III. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT TO AN INDEFINITE NON-LIFE PRISON TERM."

**ANALYSIS**

I.

{¶27} In his first assignment of error, appellant argues the trial court should have granted his motion for acquittal on the basis of insufficient evidence. We disagree.

{¶28} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue*, 5th Dist. Stark No. 2001CA00250, 2002-Ohio-351, *citing State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724. Crim.R. 29(A) allows a trial court to enter a judgment of acquittal if the state's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim.R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the state, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin*, 5th Dist. Stark No. 2007-CA-00022, 2007-Ohio-4649, ¶ 12, citing *State v. Dennis*, 79 Ohio St.3d 421, 683 N.E.2d 1096.

{¶29} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶30} Appellant was found guilty upon one count of possession of a deadly weapon while under detention pursuant to R.C. 2923.131(B), which states, "No person under detention at a detention facility shall possess a deadly weapon." R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Appellant argues appellee failed to present any evidence that the object was capable of inflicting death, i.e., that the metal of which it is made is capable of

penetrating the skin deeply enough to cause a fatal injury. We are unaware of any requirement that appellee establish that a deadly weapon has been "tested" for deadliness, and appellant points to no such requirement.

{¶31} Appellant also argues there is no evidence he used the item as a weapon, brandished it, or threatened anyone with it, and therefore the evidence was insufficient to prove the item was a deadly weapon. The fact appellant did not actually use the item as a weapon does not negate its nature as a deadly weapon. See, *State v. Samples*, 5th Dist. Stark No. 2004CA00088, 2005-Ohio-86, ¶ 17.

{¶32} Brooks and Carr testified ordinary items found in the commissary can be fashioned into deadly weapons, and that appellee's Exhibit 1 is a sharp object, deliberately altered, capable of use in a "poker" fashion to stab at someone's vital organs. The item was sharpened, which appellant admitted to, and included a "grip" fashioned from a shoelace that would prevent slipping if used as a weapon. Viewing the evidence in the light most favorable to appellee, we find the jury could easily find appellant guilty beyond a reasonable doubt. At trial, appellant claimed the item was a tool that he was using to work on a tattoo gun, but this story is unlikely due to his admission no tattoo gun was found in his cell.

{¶33} We find appellee presented sufficient evidence to prove appellant was in possession of a deadly weapon. See, *State v. Coats*, 5th Dist. Richland No. 15CA94, 2016-Ohio-3160, ¶ 22 [can lids tucked in inmate's waistband could be used as deadly weapons]. Appellant's first assignment of error is overruled.

## II., III.

{¶34} Appellant's second and third assignments of error are related and will be considered together.  Appellant challenges the application of Ohio's indefinite-sentencing scheme in the instant case, and argues defense trial counsel was ineffective in failing to raise the argument before the trial court.  We disagree.

{¶35} Appellant's summary challenge to the trial court's sentencing cites *State v. Maddox*, 2022-Ohio-764, in which the Ohio Supreme Court found that the constitutionality of an indeterminate sentence imposed under R.C. 2967.271 ripens at the time  of sentencing, and the law may be challenged on direct appeal. We note appellant sets forth no specific constitutional argument in the instant case other than general allegations of violation of due process and separation of powers.

{¶36} This Court has examined the constitutionality of indeterminate sentences pursuant to the Reagan Tokes Act as follows. In *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, we set forth this Court's position on appellant's arguments:

> For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the

Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. *See, e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

{¶37} Based on the forgoing authority, the trial court did not err in sentencing appellant to an indefinite non-life term.

{¶38} Appellant further argues defense trial counsel rendered ineffective assistance by failing to challenge the constitutionality of the Reagan Tokes Act. We disagree.

{¶39} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable

probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶40} Because we have found the Reagan Tokes Act is constitutional, appellant cannot demonstrate prejudice from counsel's failure to raise the claim in the trial court. *State v. Stevens*, 5th Dist. Muskingum No. CT2020-0010, 2022-Ohio-2474, ¶ 19.

{¶41} Appellant's second and third assignments of error are overruled.

## CONCLUSION

{¶42} Appellant's three assignments of error are overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Wise, Earle, P.J. and

Hoffman, J., concur.