[Cite as *State v. Ball*, 2023-Ohio-235.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2022 CA 00014 |
| DONTAE BALL | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common Pleas, Case No. 21 CR 00056

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     January 27, 2023

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

WILLIAM C. HAYES                    WILLIAM T. CRAMER
PROSECUTING ATTORNEY            470 Olde Worthington Road
ROBERT N. ABDALLA                  Suite 200
ASSISTANT PROSECUTOR            Westerville, Ohio 43082
20 South Second Street
Newark, Ohio 43055

*Wise, J.*

{¶1} Defendant-Appellant Dontae Ball appeals the judgment of the Licking County Court of Common Pleas denying the motion to suppress evidence and his sentence. Appellee is State of Ohio. The relevant facts leading to this appeal are as follows.

**STATEMENT OF THE FACTS AND CASE**

{¶2} On February 4, 2021, the Licking County Grand Jury indicted Appellant on one count of Aggravated Possession of Methamphetamine in violation of R.C.§2925.11(A)(C)(1)(e), one count of Aggravated Trafficking in Methamphetamine in violation of R.C. §2925.03(A)(2)(C)(1)(f), one count of Possession of Fentanyl-Related Compound in violation of R.C. §2925.11(A)(C)(11)(g), Trafficking in Fentanyl-Related Compound in violation of R.C. §2925.03(A)(2)(C)(9)(h), one count of Possession of Cocaine in violation of 2925.11(A)(C)(4)(b), and one count of Trafficking in Cocaine in violation of R.C. §2925.03(A)(2)(C)(4)(c). The indictment included a Forfeiture Specification (U.S. currency) in violation of R.C. §2981.02(A)(1)(b) and §2941.1417(A), a Forfeiture Specification (vehicle) in violation of R.C. §2981.02(A)(1)(A) and §2941.1417(A), and a Major Drug Offender Specification in violation of R.C. §2941.1410(B).

{¶3} Appellant pled not guilty to all charges.

{¶4} On March 17, 2021, Appellant filed a Motion to Suppress evidence found in a search of a storage unit. Appellant's Motion to Suppress challenged the affidavit in the warrant application was vague, unreliable and generally insufficient overall to support a finding of probable cause.

{¶5} On March 24, 2021, Appellee filed a Memorandum in Opposition.

{¶6} On June 14, 2021, the trial court denied Appellant's Motion to Suppress.

{¶7} On June 24, 2021, Appellant filed a Motion to Reconsider Motion to Suppress.

{¶8} On June 25, 2021, the trial court denied Appellant's Motion to Reconsider.

{¶9} On February 23, 2022, the matter proceeded to a jury trial.

{¶10} On February 25, 2022, the jury found Appellant guilty on all six counts. The trial court found counts one and two merged for sentencing purposes, counts three and four merged for sentencing purposes, and counts five and six merged for sentencing purposes. The trial court then imposed a maximum indefinite mandatory term of eleven to sixteen and a half years on counts two and four to run concurrently, and a maximum term of eighteen months on count six to run consecutively to counts two and four. The trial court imposed an additional, mandatory consecutive term of four years for the major drug offender specification on count four for an aggregate total of sixteen and a half to twenty-two years.

## ASSIGNMENTS OF ERROR

{¶11} Appellant filed a timely notice of appeal. He herein raises the following two Assignments of Error:

{¶12} "I. APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES WAS VIOLATED WHEN THE TRIAL COURT REFUSED TO SUPPRESS EVIDENCE ARISING FROM A SEARCH WARRANT THAT WAS NOT SUPPORTED BY PROBABLE CAUSE.

**{¶13}** "II. INDEFINITE PRISON TERMS IMPOSED UNDER THE REAGAN TOKES LAW VIOLATE THE JURY TRIAL GUARANTEE, THE DOCTRINE OF SEPARATION OF POWERS, AND DUE PROCESS PRINCIPLES UNDER THE FEDERAL AND STATE CONSTITUTIONS."

**I.**

**{¶14}** In Appellant's first Assignment of Error, Appellant argues the trial court erred in finding that Trooper Hendricks impermissibly extended the traffic stop. We disagree.

**{¶15}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991).

**{¶16}** Appellate review of a motion to suppress is a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142,145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusions, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio

App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), *overruled on other grounds*, *State v. Gunther*, 4th Dist. Pickaway No. 04CA25, 2005-Ohio-3492, ¶16.

{¶17} Three methods exist to challenge a trial court's ruling on a motion to suppress. First, appellant may challenge the trial court's findings of facts. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Second, appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, the appellate court can reverse the trial court for committing an error of law. *Williams* at 41. Third, appellant may argue the trial court incorrectly decided the ultimate issue raised in the motion to suppress. When addressing the third type of challenge, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case (Citation omitted). *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

{¶18} In the case *sub judice*, Appellant argues that there was not probable cause for the issuance of the search warrant for Appellant's storage unit. In authorizing a search warrant, the issuing magistrate's duty is to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place * * *." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶13. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶35. In reviewing whether a search warrant has been issued

upon probable cause, courts must examine the totality of the circumstances. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶15.

**{¶19}** Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus; *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶14.

**{¶20}** Appellant specifically argues that the information in the affidavit from confidential sources was unreliable and there was no nexus between the storage unit and illegal activity.

**{¶21}** Appellant argues three confidential sources provided useless information which was not demonstrably reliable, and no nexus could be drawn between the drugs and the storage unit.

**{¶22}** The affidavit to the search warrant discussed the following.

**{¶23}** In July of 2020, the first source informed the Central Ohio Drug Enforcement Task Force ("CODE TF") that Appellant was involved in the distribution of large amounts of narcotics by transporting drugs from the Columbus area to the Newark area and storing them in his apartment.

**{¶24}** In December of 2020, CODE TF received a call from an individual claiming to be Appellant's relative stating he was acting crazy and selling drugs again.

**{¶25}** In January of 2021, CODE TF was informed from another confidential source that Appellant was in a "slick looking Infinity SUV" and "doing big things."

{¶26} CODE TF Detectives observed Appellant enter a storage unit D-20 at the 79 mini storage unit. Six minutes later the detectives watched him exit. The storage unit had a master lock on the door.

{¶27} At a traffic stop Appellant gave consent to search his vehicle. No contraband was found, but he did have a key to a master lock on his key ring. During the traffic stop, Appellant denied entering the storage unit at 79 mini storage, instead lying about going to Taco Bell.

{¶28} CODE TF canine officer Vogelmeier arrived at the storage unit. Upon performing a free air sniff, Officer Vogelmeier's canine alerted to the presence of narcotics on the doors of the building in which D-20 is located.

{¶29} Under a totality of the circumstances, the affidavit contained sufficient information for the issuing judge to find there was probable cause to issue a search warrant.

{¶30} Appellant's first Assignment of Error is overruled.

**II.**

{¶31} In Appellant's second Assignment of Error, Appellant challenges the constitutionality of the Reagan Tokes Act, which codified hybrid indefinite prison terms for first- and second- degree felonies. We disagree.

{¶32} This Court has previously found this type of challenge to not yet be ripe for review. *State v. Downard*, 5th Dist. Muskingum, CT2019-0079, 2020-Ohio-4227, *appeal allowed*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1152. However, the Ohio Supreme Court found that the issue of the constitutionality of an indeterminate sentence

imposed under R.C. §2967.271 ripens at the time of sentencing, and that the law may be challenged on direct appeal. *State v. Maddox*, 2022-Ohio-764, ¶21.

**{¶33}** Recently, in *State v. Burris*, 5th Dist. Guernsey No. 21CA000021, 2022-Ohio-1481, and *State v. Ratliff*, 5th Dist. Guernsey No. 21CA000016, 2022-Ohio-1372, this Court set forth analysis regarding Appellant's arguments.

### Violation of Right to Trial by Jury

**{¶34}** Appellant argues that the Department of Rehabilitation and Correction ("DRC") unilaterally conducts fact finding which may extend an inmate's sentence, and that this violates Appellant's right to trial by jury citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We disagree.

**{¶35}** In *Apprendi*, a jury convicted the defendant of a gun crime that carried a maximum prison sentence of 10 years. *Id.* However, a judge imposed a longer sentence pursuant to a statute providing him authorization. *Id.* The judge found, by a preponderance of the evidence, that the defendant had committed the crime with racial bias. *Apprendi* held this scheme unconstitutional. *Id.* "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum," the Court explained, "must be submitted to a jury, and proved beyond a reasonable doubt" or admitted by the defendant. *Id.* A State may not avoid this restraint on judicial power by simply calling the process of finding new facts and imposing a new punishment a judicial "sentencing enhancement." *Id.*, at 495, 120 S.Ct. 2348. "[T]he relevant inquiry is one not of form, but of effect—does the required [judicial] finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.*, at 494, 120 S.Ct. 2348.

{¶36}  In *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the United States Supreme Court addressed mandatory minimum sentences and the Sixth Amendment. In *Alleyne*, the jury relied on victim testimony of an armed robbery that one of the perpetrators possessed a gun. The trial court relied on the same testimony to determine that either Alleyne or his accomplice brandished a gun. The testimony was the same, but the findings were different. The jury found that Alleyne possessed a gun, but made no finding with regard to whether Alleyne brandished a gun. The court, however determined that the gun was brandished. The Supreme Court reviewed the statutory punishment structure, which included a mandatory minimum sentence of five years if a crime of violence was committed while the offender carried a firearm, seven years if the firearm was brandished, and ten years if the firearm was discharged during the crime. 18 U.S.C. 924(c)(1)(A). The crime was otherwise punishable by a term of imprisonment not exceeding 20 years. 18 U.S.C.1951 (a). The Court held that where facts were not found by a jury that enhanced the mandatory minimum penalty for a crime, the Sixth Amendment was violated. Specifically, "[b]ecause mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne* at 103. *See, State v. Fort*, 8th Dist. Cuyahoga No. 100346, 17 N.E.3d 1172, 2014-Ohio-3412, ¶29. However, the majority in *Alleyne* was held:

> In holding that facts that increase mandatory minimum sentences
> must be submitted to the jury, we take care to note what our holding does
> not entail. Our ruling today does not mean that any fact that influences
> judicial discretion must be found by a jury. We have long recognized that

broad sentencing discretion, informed by judicial fact-finding, does not violate the Sixth Amendment. *See, e.g., Dillon v. United States*, 560 U.S. 817, ——, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010) ("[W]ithin established limits [,] ... the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute").

      *Alleyne*, 570 U.S. at 116. *See also, State v. Salim*, 5th Dist. Guernsey No. 13 CA 28, 2014-Ohio-357, ¶19.

**{¶37}** Under the Reagan Tokes Act the judge imposes both a minimum and a maximum sentence. No judicial fact finding is required. In Ohio, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. The Reagan Tokes Act does not permit the Department of Rehabilitation and Correction ("DRC") to extend a sentence beyond the maximum sentence imposed by the trial court. *Burris* at ¶86. "Further, the facts which postpone an inmate's release date are facts found as a result of prison disciplinary proceedings, not the underlying crime." *Id.*

**Violation of Separate Powers**

**{¶38}** "The Ohio Supreme Court has made it clear that when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence." *Burris* at ¶78, citing *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶18-20 citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶19. This is the scheme established by the Reagan Tokes Law. *State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶23. The statute does not permit DRC to act outside of the maximum prison term imposed by the court. *Id.* Accordingly, the Reagan Tokes Act does not violate the separation of powers doctrine.

**Violation of Due Process**

**{¶39}** Procedural requirements are minimal in the context of parole. *Burris* at ¶59. "[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (citations omitted). Courts have found the following procedures should be accorded to prisoners in a disciplinary proceeding:

> 1). a prisoner is entitled to a review unaffected by "arbitrary" decision making. *Wolff*, 418 U.S. at 557-558, 94 S.Ct. 2963; (*See*, Ohio Admin. Code 5120-9-08). 2). Advance written notice of the claimed violation. *Wolff*, 418 U.S. at 563, 94 S.Ct. 2963. (*See*, Ohio Adm. Code 5120:1-8-12). 3). A written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563, 94 S.Ct.

2963. (*See*, Ohio Adm. Code 5120-9-08(M); Ohio Adm. Code 5120: 1-11(G)(1)). 4). Prison official must have necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. *Wolff*, 418 U.S. at 566, 94 S.Ct. 2963 (*See*, Ohio Adm. Code 5120-0-08(E) (3); Ohio Adm. Code 5120-9-08(F)). 5). "Where an illiterate inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff*, 418 U.S. at 570, 94 S.Ct. 2963. (*See*, Ohio Adm. Code 5120-9-07(H)(1)).

*Burris* at ¶55

**{¶40}** In the case *sub judice*, the DRC must conduct a hearing to rebut the presumptive release date. *Id*. at ¶66. According to R.C. §2967.271(C) the DRC must determine the applicability of the following factors:

(1)    Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a)    During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of

physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

{¶41} The Reagan Tokes Act requires DRC to provide notice of the hearing. R.C. §2967.271(E). The Ohio Administrative code sets forth inmate rules of conduct, disciplinary procedures for violations of the rules, under what circumstances an inmate is transferred to restrictive housing, and procedure for release consideration hearings. Ohio Adm. Code 5120-9-06; Ohio Adm. Code 5120-9-08; Ohio Adm. Code 5120-9-10; Ohio Adm. Code 5120: 1-1-11. Therefore, the DRC gives the inmate notice in advance of behavior which may contribute or result to extending their sentence.

{¶42} The Reagan Tokes Act provides the inmate an opportunity to be heard. The DRC "shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons, as specified in section 2967.12

and Chapter 2930 of the Revised Code with respect to hearings to be conducted regarding the possible release on parole of an inmate." R.C. §2967.271(E).

**{¶43}** Therefore, we find the Reagan Tokes Act does not violate Appellant's right to due process.

**{¶44}** Appellant's second Assignment of Error is overruled.

**{¶45}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is hereby, affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/br 0109

*Hoffman, J., concurring in part, and dissenting in part*

**{¶46}**    I concur in the majority's analysis and disposition of Appellant's second assignment of error related to the Reagan Tokes law.

**{¶47}**  I respectfully dissent from the majority's decision to overrule Appellant's first assignment of error challenging the trial court's decision to overrule his motion to suppress.  My reasons follow.

**{¶48}**  There was no testimony offered regarding Appellant's motion to suppress. The matter was decided upon the four-corners of the affidavit submitted in support of the request for the search warrant and the briefs submitted in support and opposition to the motion.

**{¶49}**  The affidavit of Detective Green begins by noting in July 2020, his task force received information from a confidential source Appellant was involved in the distribution of large quantities of narcotics, was transporting the drugs in a black 2003 Infinity, sedan and storing them **INSIDE HIS APARTMENT**.  (Emphasis added).  Noteworthy, there was no information establishing the reliability of the confidential source and the information was more than six months prior to Detective Green's affidavit arguably rendering the information stale.

**{¶50}**  The next source of information was from an anonymous caller claiming to be a relative of Appellant and asserting Appellant was selling drugs again.  This call was around December 1, 2020, almost 2 months before Detective Green's affidavit.

**{¶51}**                                                                                                      Additional information was received from another, confidential source about two weeks before Detective Green's affidavit.  The source revealed Appellant was doing "big things" in an Infinity SUV.  It was independently discovered Appellant was the registered owner

of a 2010 silver Infinity SUV. Noticeably absent again was any information to establish this confidential source's reliability. Appellant was not driving that vehicle on the later date when he was observed being present at the storage units.

**{¶52}** The affidavit also averred Appellant had been convicted of felony drug trafficking charges in Licking County.

**{¶53}** Detective Green further averred the drug task force surveilled Appellant on January 22, 2021, and observed him enter his black 2003 Infinity (the sedan, not the silver Infinity SUV) and park it at a storage unit. The affidavit stated the door to unit D-20 was open and approximately six minutes later Appellant was seen driving out of the storage unit parking lot. The affidavit did not specifically aver Appellant was seen by law enforcement entering or exiting unit D-20, but did aver Detective Vogelmeier contacted management (of the storage unit) and advised him a black male driving a black car went inside unit D-20.

**{¶54}** Following the traffic stop of Appellant, Detective Green then observed Appellant possessed a small master key and the lock on storage unit D-20 was a master padlock. (Emphasis added). Whether the "master key" and the "master padlock" are generic locks or of a specific manufacturer is unknown. Of significance is the fact the affidavit did not aver the key fit the padlock. The affidavit averred Appellant denied going to the storage unit.

**{¶55}** Of critical significance is the averment in Detective Green's affidavit regarding his K-9's performance of a free air sniff on all the doors of the same side of the building as unit D-20, which resulted in a positive alert for the odor of narcotics. The affidavit does not describe how many storage units were on the same side as D-20 or

identify specifically at which of the door(s) on that side of the building the K-9 alerted or otherwise provide the nexus between the positive alert and the specific unit D-20.[1]

{¶56} Because of the failure to establish the reliability of the confidential sources and the anonymous "relative", and noting the drugs Appellant was allegedly transporting were found in the storage unit, not his apartment – such information ought not be considered in determining whether probable cause existed for the issuance of the search warrant. It is a given Appellant lied about being at the storage units despite not being seen by the surveillance officers to have actually entered or exited unit D-20.

{¶57} Most troubling is the lack of specific information tying the K-9 positive alert directly to unit D-20. Absent such direct nexus and discounting the information provided by the confidential and anonymous source, I do not believe probable cause existed for the issuance of the search warrant.[2]

---

[1] The trial court's summary of the affidavit in its decision denying Appellant's motion to suppress stated the drug dog altered to Unit D-20.

[2] Appellee has not argued the good faith exception established in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed. 2d 677 (1990), is applicable in this case and, as such, I will not, sua sponte, consider it.